# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

Peabody Investments Corp.; Peabody
Energy Corporation; Peabody Natural
Resources Company; Peabody Midwest
Mining LLC; Peabody Powder River
Mining LLC; Peabody Coulterville
Mining, LLC; Peabody Coalsales, LLC
f/k/a Coalsales, LLC; Coalsales II, LLC
f/k/a Peabody Coalsales Company;
Peabody Coaltrade, LLC f/k/a
Coaltrade, LLC and Peabody Coaltrade,
Inc.; and Twentymile Coal, LLC f/k/a
Twentymile Coal Company,

        *Plaintiffs*,

v.

CSX Transportation, Inc.; BNSF
Railway Company; Union Pacific
Railroad Co.; and Norfolk Southern
Railway Company,

        *Defendants*.

MDL Docket No. 1:20-mc-00008-BAH

Civil Action No. 1:20-cv-00270-BAH

---

## <u>UNION PACIFIC RAILROAD COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT</u>

Defendant Union Pacific Railroad Company ("UP"), for itself only, answers

the Complaint ("Complaint") of Peabody Investments Corp.; Peabody Energy

Corporation; Peabody Natural Resources Company; Peabody Midwest Mining LLC (including as successor-in-interest to any and all claims held by Black Beauty Coal Company); Peabody Powder River Mining LLC (including as successor-in-interest to any and all claims held by Powder River Coal Company, Inc. and Powder River Coal, LLC); Peabody Coulterville Mining, LLC (including as successor-in-interest to any and all claims held by Coulterville Coal Company, LLC and Williamsville Coal Company, LLC); Peabody Coalsales, LLC f/k/a Coalsales, LLC; Coalsales 11 LLC f/k/a Peabody Coalsales Company; Peabody Coaltrade, LLC f/k/a Coaltrade, LLC and Peabody Coaltrade, Inc.; and Twentymile Coal, LLC f/k/a Twentymile Coal Company (collectively, "Plaintiffs" or "Peabody"), as set forth below.  UP denies each and every allegation of the Complaint, except as specifically stated, and denies that it violated in any way the antitrust laws under which Plaintiffs purport to bring this action.

## RESPONSE TO PLAINTIFFS' ALLEGATIONS

UP responds to the allegations of the Complaint's separately numbered paragraphs as follows:

## NATURE OF THE ACTION

1.     UP denies the allegations in this paragraph.

2.     UP denies the allegations in this paragraph.

3.     UP denies the allegations in this paragraph.

4.      UP denies the allegations in this paragraph.

5.      UP admits that the Surface Transportation Board ("STB") issued a

ruling in January 2007 directed to rate-based rail fuel surcharges related to

regulated traffic.  UP asserts that the ruling speaks for itself and on that basis

denies Plaintiffs' characterization of the ruling, which is inappropriate for a

complaint and should be stricken.  UP denies the remaining allegations in this

paragraph.

6.      UP admits that the American Chemistry Council and an entity calling

itself Consumers United for Rail Equity issued a purported study of railroad fuel

surcharge revenue in 2007.  UP denies that that study accurately analyzed or

reported its fuel surcharge revenue or fuel costs.  UP denies the allegations in this

paragraph.

7.      UP denies the allegations in this paragraph.

8.      UP denies that Plaintiffs are entitled to any damages.

**PARTIES**

9.      UP lacks sufficient information to form a belief about the truth of the

allegations concerning Plaintiffs' business, and on that basis denies them.

10.     UP lacks sufficient information to form a belief about the truth of the

allegations concerning Plaintiffs' business, and on that basis denies them.

11.     UP admits that Peabody Energy Corporation; Peabody Coalsales,

LLC f/k/a Coalsales, LLC; and Peabody Coaltrade, LLC f/k/a Coaltrade, LLC

purchased certain rail transportation services from UP during the relevant time

period.  After a reasonable inquiry, UP lacks sufficient information to form a belief

about the truth of the allegations concerning whether Peabody Investments Corp.;

Peabody Midwest Mining LLC; Peabody Coulterville Mining, LLC; Coalsales II,

LLC f/k/a Peabody Coalsales Company; Peabody Coaltrade, Inc.; Peabody Natural

Resources Company; Peabody Powder River Mining LLC and Twentymile Coal,

LLC f/k/a Twentymile Coal Company purchased transportation services from UP

during the relevant period.  UP lacks sufficient information to form an independent

belief concerning the truth of the specific allegations regarding Plaintiffs' purchase

of rail freight services from the other Defendants, and on that basis denies them.

UP denies the remaining allegations in this paragraph.

12.     UP lacks sufficient information to form a belief about the truth of the

allegations concerning Peabody Investments Corp.'s corporate status, residence,

and business, and on that basis denies them.

13.     UP lacks sufficient information to form a belief about the truth of the

allegations concerning Peabody Energy Corporation's corporate status, residence,

and business, and on that basis denies them.

14.     UP lacks sufficient information to form a belief about the truth of the

allegations concerning Peabody Natural Resources Company's corporate status,

residence, and business, and on that basis denies them.

15.     UP lacks sufficient information to form a belief about the truth of the allegations concerning Peabody Midwest Mining LLC's and Black Beauty Coal Company's corporate status, residence, and business and on that basis denies them.

16.     UP lacks sufficient information to form a belief about the truth of the allegations concerning Peabody Power River Mining LLC's, Powder River Coal Company, Inc.'s, and Powder River Coal, LLC's corporate status, residence, and business and on that basis denies them.

17.     UP lacks sufficient information to form a belief about the truth of the allegations concerning Peabody Coulterville Mining, LLC's, Coulterville Coal Company, LLC's, and Williamsville Coal company, LLC's corporate status, residence, and business and on that basis denies them.

18.     UP lacks sufficient information to form a belief about the truth of the allegations concerning Peabody Coalsales, LLC f/k/a Coalsales, LLC's corporate status, residence, and business, and on that basis denies them.

19.     UP lacks sufficient information to form a belief about the truth of the allegations concerning Coalsales II, LLC f/k/a Peabody Coalsales Company's corporate status, residence, and business and on that basis denies them.

20.     UP lacks sufficient information to form a belief about the truth of the allegations concerning Peabody Coaltrade, LLC f/k/a Coaltrade, LLC's corporate

status, residence, and business, and on that basis denies them.

21.     UP lacks sufficient information to form a belief about the truth of the

allegations concerning Twentymile Coal, LLC f/k/a Twentymile Coal Company's

corporate status, residence, and business, and on that basis denies them.

22.     UP admits that CSX Transportation, Inc. ("CSX") is a major freight

railroad with railway lines in the eastern United States.  Based on a review of

public filings, CSX's principal executive offices are located at 500 Water Street,

15th Floor, Jacksonville, Florida 32202.  UP lacks sufficient information to form a

belief about the truth of the remaining allegations in this paragraph.

23.     UP admits that Norfolk Southern Railway Company ("NS") is a major

freight railroad with railway lines in the eastern United States.  Based on a review

of public filings, NS's principal executive offices are located at Three Commercial

Place, Norfolk, Virginia 23510-2191.  UP lacks sufficient information to form a

belief about the truth of the remaining allegations in this paragraph.

24.     UP admits that BNSF Railway Company ("BNSF") is a major freight

railroad with railway lines in the western United States.  Based on a review of

public filings, BNSF's principal executive office is located at 2650 Lou Menk

Drive, Fort Worth, Texas 76131-2830.  UP lacks sufficient information to form a

belief about the truth of the remaining allegations in this paragraph.

25.     UP admits that it has its principal place of business at 1400 Douglas

Street, Omaha, Nebraska 68179.  UP admits that it serves primarily the western two-thirds of the United States and coordinates lawfully with other rail carriers to handle freight to and from other parts of the country.  UP admits that its parent corporation maintains an office in Washington, D.C.

## JURISDICTION AND VENUE

26.     UP admits that the Complaint purports to plead federal antitrust claims against Defendants under Section 4 of the Clayton Act, 15 U.S.C. § 15, and Section 1 of the Sherman Act, 15 U.S.C. § 1.  UP denies it has violated the antitrust laws, or that the Complaint states a claim under those statutes.

27.     This paragraph states a legal conclusion for which no response is necessary.  To the extent a response is deemed required, UP denies the allegations in this paragraph.

28.     This paragraph states a legal conclusion for which no response is necessary.  UP denies the remaining allegations in this paragraph.

29.     This paragraph states a legal conclusion for which no response is necessary.  UP denies the remaining allegations in this paragraph.

30.     UP does not contest personal jurisdiction in this case.  UP denies all remaining allegations in this paragraph.

## INTERSTATE TRADE AND COMMERCE

31.     UP lacks sufficient information to form a belief about the truth of the

allegations in this paragraph concerning Defendants' percentage of rail shipments and operating revenues, and on that basis denies them.  UP denies the remaining allegations in this paragraph.

32.     UP admits that it sells rail transportation services that affect interstate commerce.  UP denies that it has engaged in a conspiracy or has co-conspirators. UP denies the remaining allegations in this paragraph.

33.     UP denies the allegations in this paragraph.

## DEREGULATION OF THE RAILROAD INDUSTRY

34.     UP admits that the Staggers Rail Act of 1980 ("the Staggers Act") partially deregulated the railroad industry.  The third sentence of this paragraph states legal conclusions to which no response is necessary.  To the extent a response is deemed required, UP denies those allegations.  UP denies the remaining allegations in this paragraph.

35.     UP admits that, prior to the Staggers Act, railroads generally charged rates established in published tariffs filed with the ICC.  The second sentence of this paragraph states legal conclusions to which no response is necessary.  To the extent a response is deemed required, UP denies this allegation.  UP denies the remaining allegations in this paragraph.

36.     UP lacks sufficient information to form a belief about the truth of the allegation that 80 percent or more of all rail shipments move under private

transportation contracts or are otherwise exempt from rate regulation, and on that basis denies it.  UP denies that it has colluded on freight rates.  UP denies the remaining allegations in this paragraph.

37.     UP admits that there are now seven Class I railroads in the United States as Plaintiffs define the term, and that two of those railroads are owned by Canadian entities.  UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning other Defendants' percentage of track operation and revenues, on that basis denies them.  UP denies the remaining allegations in this paragraph and Footnote 1.

38.     UP denies the allegations in this paragraph.

## BEFORE [ALLEGEDLY] CONSPIRING, THE DEFENDANTS WERE [ALLEGEDLY] UNABLE TO SUCCESSFULLY MAINTAIN FUEL SURCHARGES

39.     UP denies the unnumbered heading that appears before this paragraph. UP asserts that the decisions and regulations of the STB speak for themselves and denies the remaining allegations in this paragraph.

40.     UP denies the allegations in this paragraph.

41.     UP admits that it entered into private freight transportation contracts after passage of the Staggers Act and that some of those contracts included rate escalation provisions tied to various cost indices.  UP admits that the All Inclusive Index ("AII") and the Rail Cost Adjustment Factor ("RCAF") were indices

published by the AAR that weighted a variety of cost factors.  UP denies that the

AII or RCAF captured its actual increases in fuel costs.  UP admits that James R.

Young stated in an earnings conference call in October 2004 that "RCAF is what it

is. It looks at actual costs through the industry."  UP denies that Mr. Young's

statement meant that adjustments based on RCAF permitted full and timely

recovery of actual fuel cost increases.  During that same earnings call, Mr. Young

explained that UP uses fuel surcharges "to neutralize the volatility of fuel prices."

UP denies the remaining allegations in this paragraph.

42.     UP denies the allegations in this paragraph.

43.     UP admits that the *In re Rail Freight Fuel Surcharge Antitrust Litig.*,

287 F.R.D. 1, 48 [-49] (D.D.C 2012) ("*Rail Freight I*") opinion cited by Plaintiffs

contains the words "fuel surcharges" quoted in the first sentence of this paragraph

and the language quoted in the second and third sentences of this paragraph.  UP

asserts that the opinion speaks for itself and on that basis denies Plaintiffs'

characterization of the opinion.  UP denies the remaining allegations in this

paragraph.

44.     UP admits that the *Rail Freight I* opinion contains the language

quoted in the first sentence of this paragraph.  UP denies Plaintiffs'

characterizations of the opinion and the testimony it quotes.  UP admits that the

*Rail Freight I* opinion contains the language quoted in the last sentence of this

paragraph, which quotes from a document produced in *In re: Rail Freight Fuel Surcharge Antitrust Litig.*, Case No. 07-489 (D.D.C.) ("the Putative Class Action").  UP denies Plaintiffs' characterizations of the opinion and the document it quotes.  UP denies the remaining allegations in this paragraph.

45.     UP admits that the *Rail Freight I* opinion contains the language quoted in this paragraph.  UP denies Plaintiffs' characterizations of the opinion and the testimony it quotes.  UP denies the remaining allegations in this paragraph.

46.     UP admits that the *Rail Freight I* opinion contains the language quoted in this paragraph.  UP denies Plaintiffs' characterizations of the opinion and the testimony it quotes.  UP denies the remaining allegations in this paragraph.

47.     UP admits that a document produced in the Putative Class Action contains the language quoted in this paragraph.  UP denies Plaintiffs' characterization of that document.

48.     UP admits that the *Rail Freight I* opinion contains the language quoted in this paragraph.  UP denies Plaintiffs' characterizations of the opinion and the testimony it quotes.  UP denies the remaining allegations in this paragraph.

49.     UP admits that the *Rail Freight I* opinion contains the language quoted in this paragraph.  UP denies Plaintiffs' characterizations of the opinion and the testimony it quotes.  UP denies the remaining allegations in this paragraph.

50.     UP admits that the *Rail Freight I* opinion contains the language

quoted in this paragraph. UP denies Plaintiffs' characterizations of the opinion and the testimony it quotes. UP denies the remaining allegations in this paragraph.

51. UP admits that the *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 103 (D.D.C. 2017) ("*Rail Freight II*") opinion cited by Plaintiffs contains the language quoted in the first sentence of this paragraph and contains the quoted language in the third sentence of this paragraph and the language attributed to a BNSF internal memorandum. UP asserts that the opinion speaks for itself and denies Plaintiffs' characterizations of the opinion and the document it quotes. UP admits that a document produced in the Putative Class Action contains the quoted language in this paragraph attributed to a UP executive. UP denies Plaintiffs' characterizations of that document. UP denies the remaining allegations in this paragraph.

**THE DEFENDANTS [ALLEGEDLY] CONSPIRED TO DEVISE A FUEL SURCHARGE SCHEME AND [ALLEGEDLY] ILLEGALLY AGREED NOT TO COMPETE**

52. UP denies the unnumbered heading that appears before this paragraph. UP admits that the National Freight Transportation Association held a meeting in Litchfield Park, Arizona. UP admits that certain Defendants attended certain meetings of the Association of American Railroads ("AAR") and the National Freight Transportation Association ("NFTA") at which appropriate topics concerning the rail industry were discussed. UP denies the remaining allegations

in this paragraph.

53.     UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph concerning CSX's internal recommendations and decision-making, and on that basis denies them. UP admits that a document produced in the Putative Class Action contained the quoted language in this paragraph.  UP denies Plaintiffs' characterizations of that document.  UP denies the remaining allegations in this paragraph.

54.     UP admits that a document produced in the Putative Class Action contained the unbracketed language quoted in this paragraph.  UP denies Plaintiffs' characterizations of that document.  UP denies the remaining allegations in this paragraph.

55.     UP admits that on March 20, 2003, CSX issued a press release titled "CSX Transportation Announces Modifications To Its Fuel Cost Recovery Program."  UP admits that in April 2003, it announced and sought concurrence for a change to the calculation of one of its WTI-index based fuel surcharges, which UP did not ultimately implement.  UP denies Plaintiffs' characterizations of these events and documents concerning them.  UP denies the remaining allegations in this paragraph.

56.     UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph and on that basis denies them.

57.     UP lacks sufficient information to form a belief about the truth of the allegations in this paragraph, and on that basis denies them.

58.     UP admits that a document produced in the Putative Class Action contained the unbracketed language quoted in this paragraph.  That same document also identified differences between BNSF's and UP's intended fuel surcharge approaches.  UP denies Plaintiffs' characterizations of that document.  UP denies the remaining allegations in this paragraph.

59.     UP denies the allegations in this paragraph.

60.     UP denies the allegations in this paragraph.

61.     UP admits that a document produced in the Putative Class Action contained the unbracketed language quoted in this paragraph.  That same document also identified differences between BNSF's and UP's intended fuel surcharge approaches.  UP denies Plaintiffs' characterizations of that document.  UP denies the remaining allegations in this paragraph.

62.     UP admits that one of UP's carload fuel surcharges applied a surcharge of 0.5 percent for every five cent increase above $1.35 per gallon in the HDF index, and that this formula resulted in the same percentage surcharge as one of BNSF's published surcharges above a price of $1.35 per gallon in the HDF index.  UP denies Plaintiffs' characterizations of this fact.  UP denies the remaining allegations in this paragraph.

63.     UP admits that the formula for one of its fuel surcharges applied changes to the surcharge on the second month after a change in the HDF price.  UP denies the remaining allegations in this paragraph.

64.     UP denies the allegations in this paragraph.

65.     UP admits that it announced a change to the calculation of one of its WTI-index based fuel surcharges in 2003, which it did not implement.  UP denies the remaining allegations in this paragraph.

66.     UP denies the allegations in this paragraph.

67.     UP denies the allegations in this paragraph.

68.     UP asserts that the AAR's description of itself speaks for itself.  UP admits that Defendants' CEOs are members of the board of the AAR, which holds meetings and engages in lawful communications.  UP denies the remaining allegations in this paragraph.

69.     UP denies the allegations in this paragraph.

70.     UP admits that the AAR introduced the All-Inclusive Index Less Fuel ("AII-LF") in the fall of 2003.  UP asserts that the AAR's publication speaks for itself.  UP denies that the AAR's announcement of the AII-LF was pursuant to, or the result of, a conspiracy, or that the decision was unlawful collective action.  UP denies the remaining allegations in this paragraph.

71.     UP lacks sufficient information to form a belief about the truth of the

allegations in this paragraph, and on that basis denies them.

72.     UP lacks sufficient information to form a belief about the truth of the allegations regarding the activities of the "Eastern Railroads," and on that basis denies them.  UP denies the remaining allegations in this paragraph.

73.     UP lacks sufficient information to form a belief about the truth of the allegations regarding the activities of the "Eastern Railroads," and on that basis denies them.  UP denies the remaining allegations in this paragraph.

74.     UP admits that the *Rail Freight I* opinion contains the language quoted before the colon in the first sentence of this paragraph.  UP denies Plaintiffs' characterizations of the opinion and the testimony it quotes.  UP admits that the *Rail Freight I* opinion contains the language quoted after the colon in the first sentence and in the last sentence of this paragraph, which quote documents produced in the Putative Class Action.  UP denies Plaintiffs' characterizations of the opinion and documents it quotes.  UP denies the remaining allegations in this paragraph.

75.     UP denies the allegations in this paragraph.

76.     UP denies the allegations in this paragraph.

77.     UP admits that the *Rail Freight I* opinion includes the language quoted in the first sentence of this paragraph.  UP asserts the opinion speaks for itself and denies Plaintiffs' characterizations of the opinion and the testimony it

quotes.  UP denies the remaining allegations in this paragraph.

78.     UP admits that the AII and RCAF included a fuel cost component.

UP denies that the RCAF or the AII captured its actual increases in fuel costs.  UP

denies the remaining allegations in this paragraph.

79.     UP denies the allegations in this paragraph.

80.     UP denies the allegations in this paragraph.

81.     UP lacks sufficient information to form a belief about the truth of the

allegations regarding the attendees at meetings between other rail carriers, and on

that basis denies them.  UP admits that CSX and UP employees held an alliance

meeting in June 2003.  UP denies Plaintiffs' characterizations of the meeting and

discussions.  UP denies the remaining allegations in this paragraph.

82.     UP denies the allegations in this paragraph.

83.     UP denies the allegations in this paragraph.

## THE DEFENDANTS [ALLEGEDLY] SUCCESSFULLY IMPLEMENTED THEIR ILLEGAL, ANTICOMPETITIVE FUEL SURCHARGE SCHEME

84.     UP denies the unnumbered heading that appears before this paragraph.

UP denies the allegations in this paragraph.

85.     UP denies the allegations in this paragraph.

86.     UP lacks sufficient information to form a belief about the truth of the

allegations relating to the FSC percentages charged by other defendants, and on

that basis denies them.  UP denies the remaining allegations in this paragraph.

87.     UP lacks sufficient information to form a belief about the truth of the

allegations relating to the FSC percentages charged by other defendants, and on

that basis denies them.  UP denies the remaining allegations in this paragraph.

88.     UP denies the allegations in this paragraph.

89.     UP lacks sufficient information to form a belief about the truth of the

allegations concerning the state of mind of purported industry experts, and on that

basis denies them.  UP asserts that the quoted language in this paragraph appears to

be from a *Traffic World* article and that the article speaks for itself.  UP denies

Plaintiffs' characterizations of the article.  UP admits that the American Chemistry

Council and an entity calling itself Consumers United for Rail Equity issued a

purported study of railroad fuel surcharge revenue in 2007.  UP asserts that the

study speaks for itself, and denies Plaintiffs' characterization of the study.  UP

denies that the study accurately analyzed or reported its fuel surcharge revenue or

fuel costs.  UP denies the remaining allegations in this paragraph.

90.     UP lacks sufficient information to form an independent belief as to the

truth of the allegations concerning other Defendants' costs and revenues, and on

that basis denies them. UP denies the remaining allegations in this paragraph.

91.     UP lacks sufficient information to form an independent belief as to the

truth of the allegations concerning other Defendants' fuel efficiency, and on that

basis denies them.  UP denies the remaining allegations in this paragraph.

92.     UP denies the allegations in this paragraph.

93.     UP admits that the *Rail Freight I* opinion cited by Plaintiffs contains

the language quoted in this paragraph.  UP asserts that the opinion speaks for itself

and denies Plaintiffs' characterizations of the opinion and the testimony it quotes.

UP denies the remaining allegations in this paragraph.

94.     UP denies the allegations in this paragraph.

95.     UP denies the allegations in this paragraph.

96.     UP admits that documents produced in the Putative Class Action

contain the unbracketed language quoted in this paragraph.  UP denies Plaintiffs'

characterizations of those documents.  UP denies the remaining allegations in this

paragraph.

97.     UP admits that a document produced in the Putative Class Action

contains the language quoted in this paragraph.  UP denies Plaintiffs'

characterization of that document.  UP denies the remaining allegations in this

paragraph.

98.     UP admits that documents produced in the Putative Class Action

contain the unbracketed words quoted in this paragraph.  UP denies Plaintiffs'

characterizations of those documents.  UP denies the remaining allegations in this

paragraph.

99.     UP admits that a document produced in the Putative Class Action

contains the language quoted in this paragraph.  UP denies Plaintiffs'

characterizations of that document.  UP denies the remaining allegations in this

paragraph.

100.    UP admits that the *Rail Freight I* opinion cited by Plaintiff contains

the language quoted in this paragraph.  UP asserts that the opinion speaks for itself

and denies Plaintiffs' characterizations of the opinion and the testimony it quotes.

UP denies the remaining allegations in this paragraph.

101.    UP admits that the *Rail Freight II* opinion cited by Plaintiffs contains

the quoted language in the first sentence of this paragraph, and that the *Rail

Freight II* opinion contains the language quoted in the final three sentences of this

paragraph which, in turn, quotes documents produced in the Putative Class Action.

UP denies Plaintiffs' characterizations of the opinion and the documents it quotes.

UP denies the remaining allegations in this paragraph.

102.    UP admits that a document titled "The Current Financial State of the

Class I Freight Rail Industry" ("Staff Report") states, among other things, the

quoted language in this paragraph and contains a chart similar to Figure 1.  UP

denies Plaintiffs' characterizations of the Staff Report, and denies Plaintiffs'

implication that the statements in the Staff Report concern either fuel prices or fuel

surcharges.  UP denies the remaining allegations in this paragraph.

103.    UP admits that a document produced by BNSF in the Putative Class

Action contains the language quoted in this paragraph.  UP denies Plaintiffs' characterizations of that document.  UP denies the remaining allegations in this paragraph.

104.    UP denies the allegations in this paragraph.

105.    UP admits that Mr. Young was interviewed in 2007.  Any document referring to or purporting to transcribe statements made during that interview speaks for itself and UP denies any allegations inconsistent with such document or transcription.  UP denies the remaining allegations of this paragraph.

106.    UP admits NS's chief executive officer, Charles W. Moorman, submitted a written statement to Congress in 2007 that stated the quoted language in this paragraph.  UP denies Plaintiffs' characterization of Mr. Moorman's statements.  UP denies the remaining allegations in this paragraph.

## THE STB DECISION

107.    UP lacks sufficient information to form a belief about the truth of the allegations concerning the specific timing of the STB investigation, and on that basis denies them.  UP admits that the STB issued a ruling in January 2007 directed to rail fuel surcharges.  UP asserts that the ruling speaks for itself and on that basis denies Plaintiffs' characterization of the ruling, which is inappropriate for a complaint and should be stricken.  To the extent a response is deemed required, UP denies the remaining allegations in this paragraph.

108.   UP admits that the STB issued a ruling in January 2007 directed to rail fuel surcharges.  UP asserts that the ruling speaks for itself and on that basis denies Plaintiffs' characterization of the ruling, which is inappropriate for a complaint and should be stricken.  To the extent a response is deemed required, UP denies the remaining allegations in this paragraph.

109.   UP denies the allegations in this paragraph.

## THE DEFENDANTS [ALLEGEDLY] REAPED SUPRA-COMPETITIVE PROFITS

110.   UP denies the unnumbered heading preceding this paragraph.  UP lacks sufficient information to form an independent belief as to the truth of the allegations in this paragraph concerning Defendants' market capitalization and operating revenue, and on that basis denies them.  UP admits that James Young stated the language quoted in the last sentence of this paragraph in an interview in 2007.  UP denies Plaintiffs' characterizations of Mr. Young's statements.  In response to a separate question during that interview concerning capital investment, Mr. Young stated that UP is committed to a high level of capital spending as long as UP's financial returns continue to improve.  He added that it has only been in the last couple of years that the financial returns in the rail business have started to move in the right direction.  UP denies the remaining allegations in this paragraph.

111.    UP admits that a document titled, "The Current Financial State Of The Class I Freight Rail Industry" ("Staff Report") states, among other things, the quoted language in this paragraph.  UP denies Plaintiffs' characterizations of that document.  UP denies the remaining allegations in this paragraph.

112.    UP denies the first sentence of this paragraph.  UP admits that a document filed in the Putative Class Action contained the language quoted in this paragraph.  UP denies Plaintiffs' characterization of that document.  UP denies the remaining allegations in this paragraph.

113.    UP admits that a document filed in the Putative Class Action contained the unbracketed language quoted in this paragraph.  UP denies Plaintiffs' characterization of that document.  UP denies the remaining allegations in this paragraph.

114.    UP admits that a document filed in the Putative Class Action contained the language quoted in this paragraph.  UP denies Plaintiffs' characterization of that document.  UP denies the remaining allegations in this paragraph.

115.    UP admits that a document filed in the Putative Class Action contained the language quoted in this paragraph.  UP denies Plaintiffs' characterization of that document.  UP denies the remaining allegations in this paragraph.

116.    UP denies the allegations in this paragraph including all of its

subparts.

117.    UP denies the allegations in this paragraph.

## COUNT I
### ([Alleged] Violation of Section 1 and 3 of the Sherman Act
### and Section 4 of the Clayton Act)

118.    UP denies the unnumbered heading in the preceding paragraph.  UP

incorporates by reference its responses to the preceding numbered paragraphs.

119.    UP denies the allegations in this paragraph.

120.    UP denies the allegations in this paragraph.

121.    UP denies the allegations in this paragraph.

122.    UP denies the allegations in this paragraph, including all of its

subparts.

123.    UP denies the allegations in this paragraph.[1]

## PLAINTIFFS' PRAYER FOR RELIEF

UP denies that Plaintiffs are entitled to any of the relief they seek.

## DEMAND FOR JURY TRIAL

Defendant Union Pacific Railroad Company hereby demands trial by jury on

all issues so triable.

---

[1] This paragraph appears to be incorrectly numbered in Plaintiffs' complaint as paragraph "108."  For the avoidance of doubt, UP denies the allegations that appear after the number "108" on page 35 of the complaint.

## UNION PACIFIC'S AFFIRMATIVE DEFENSES

UP asserts the following defenses without in any way alleging it has the burden of proof with respect to any of the defenses or that Plaintiffs are relieved of their burden to prove each and every element of their claims and damages, if any, to which Plaintiffs claim they are entitled.  The defenses apply to each and every cause of action alleged.

### FIRST AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations, including 15 U.S.C. § 15b.  Plaintiffs' claims are also barred in whole or in part by limitations on the time for bringing claims specified in particular contracts between Plaintiffs and UP.

### SECOND AFFIRMATIVE DEFENSE
### (Estoppel, Waiver)

Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel and waiver.

### THIRD AFFIRMATIVE DEFENSE
### (10706 Statutory Protections)

Defendants' alleged conduct with respect to communications concerning interline railroad services and other railroad services was privileged under law, including, but not limited to, the statutory privileges described in 49 U.S.C. §

10706.

## FOURTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Plaintiffs are barred from recovery by reason of their failure to mitigate,

minimize or avoid the damages alleged in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE
### (Laches)

Plaintiffs' claims are barred by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE
### (Exclusive Jurisdiction)

Plaintiffs' claims are barred under federal laws granting exclusive

jurisdiction to the STB, including 49 U.S.C. § 10501, et seq., to the extent those

claims are based on conduct that is subject to the jurisdiction of the STB.

## SEVENTH AFFIRMATIVE DEFENSE
### (Set-Off)

Any alleged claim for damages by Plaintiffs is subject to set-off against any

money that Plaintiffs owe to UP for rail services provided by UP.

## EIGHTH AFFIRMATIVE DEFENSE
### (Standing)

Plaintiffs lack standing to assert the antitrust claims that they allege.

## NINTH AFFIRMATIVE DEFENSE
### (Pass-On)

Plaintiffs' claims are barred in whole or in part by the pass-on defense.

## TENTH AFFIRMATIVE DEFENSE
### (Implied Preemption)

Plaintiffs' claims are preempted by virtue of the federal regulatory scheme governing the provision of rail freight services, including under the filed rate doctrine.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim for Relief)

Plaintiffs fail to state facts or claims against UP sufficient to state a claim upon which relief may be granted.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Arbitration)

Plaintiffs' claims against UP are barred, in whole or in part, to the extent that Plaintiffs agreed to arbitrate claims related to their relevant contracts with UP.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (49 U.S.C. § 11101)

Plaintiffs' claims are barred, in whole or in part, because those claims improperly infer the existence of a conspiracy based on UP's common carrier obligation to disclose rates and provide shippers with advance notice of rate changes pursuant to 49 U.S.C. § 11101.

## FIFTEENTH AFFIRMATIVE DEFENSE

UP incorporates any other affirmative defenses pleaded by other Defendants that do not conflict with UP's affirmative defenses.

## PRAYER FOR RELIEF

WHEREFORE, UP prays for relief from judgment as follows:

1.  That judgment be entered in favor of UP and against Plaintiffs on all their claims;

2.  That Plaintiffs take nothing by their Complaint;

3.  That the Complaint be dismissed with prejudice;

4.  That UP recover all attorneys' fees, costs, and expenses incurred in defense of this action; and,

5.  That the Court grant UP such further relief as the Court deems just and proper.

Dated: March 10, 2020                    Respectfully submitted,


                                         */s/ Matthew M. Collette*
                                         Matthew M. Collette
                                         D.C. Bar No. 427167
                                         MASSEY & GAIL LLP
                                         1000 Maine Ave. SW, Suite 450
                                         Washington, DC 20024
                                         Phone: (202) 795-3326
                                         Fax: (312) 379-0467
                                         mcollette@masseygail.com

                                         Leonard A. Gail
                                         Illinois State Bar No. 6199745
                                         MASSEY & GAIL LLP
                                         50 E. Washington Street, Suite 400
                                         Chicago, IL 60602
                                         Phone: (312) 283-1590
                                         Fax: (312) 379-0467
                                         lgail@masseygail.com

                                         *Attorneys for Union Pacific Railroad Company*

## **<u>CERTIFICATE OF SERVICE</u>**

I, Matthew M. Collette, certify that on March 10, 2020, I caused a true and correct copy of the foregoing **Defendant Union Pacific Railroad Company's Answer to Plaintiffs' Amended Complaint** to be served upon all CM/ECF registrants of record in this action using the Court's CM/ECF system.

*/s/ Matthew M. Collette*
Matthew M. Collette
